**Bruce C. KIXMILLER, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 72-1285.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1973.

Decided Jan. 30, 1974.

Carl L. Shipley, Washington, D. C., for petitioner. John Barry Donohue, Jr., Washington, D. C., was on the brief for petitioner.

Richard E. Nathan, Asst. Gen. Counsel, S. E. C., with whom Walter North, Acting Gen. Counsel, David Ferber, Sol., and David J. Romanski, Atty., S. E. C., were on the brief, for respondent.

Before TAMM, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

Petitioner seeks review in this court of advice informally given a corporation by the staff of the Securities and Exchange Commission. The advice was that the staff, for reasons stated, would not recommend action by the Commission respecting the contemplated exclusion from management's proxy materials of a stockholder's proposals for action at a stockholders' meeting. The Commission has refused either to examine the staff's view of the matter or to express a view of its own; it now asserts that we lack jurisdiction to consider the peti-

tion for review and urges dismissal. We grant the motion and dismiss the petition.

## I

On November 19, 1971, petitioner, a Class B stockholder [1] of the Washington Post Company, informed the company's general counsel of his intention to submit three proposals relating to general business matters [2] for consideration at the 1972 annual meeting of stockholders. He requested that his propositions and supporting statements, which he set out in a letter to the company, be incorporated into management's proxy materials as allegedly required by proxy rules adopted by the Commission pursuant to Section 14 of the Securities Exchange Act of 1934.[3]

Rule 14a–8(a) of the proxy rules [4] requires the issuer of proxy materials to include any proposals (not otherwise excludable under provisions of the rules)[5] submitted by "any security holder entitled to vote at a meeting of security holders of the issuer." The company, following the procedure established by the rules,[6] informed the Commission's Division of Corporate Finance of its in-

tention to omit petitioner's proposals from its 1972 proxy statements,[7] and sought confirmation that the Division would not urge action by the Commission on that account. Petitioner filed memoranda and supporting materials in opposition to the request for a no-action decision.

The Division issued a letter opinion on March 8, 1972, stating that it would not recommend that the Commission take enforcement action, and expressing the ground for that decision.[8] Petitioner then asked the Commission to reexamine the Division's ruling; but was later informed that the Commission "declined to review the staff's position or hold an oral hearing . . . [or] to issue an informal statement on the matter." [9] This petition for review followed.

## II

Our authority to directly review Commission action springs solely from Section 25(a) of the Securities Exchange Act of 1934,[10] which confines our jurisdiction to "order[s] issued by the Commission. . . ." [11] We think

---

1. Petitioner owned 1,000 shares of Class B stock.

2. Proposal A would have instructed the board of directors to take such action as might be necessary to amend the company's certificate of incorporation and by-laws to provide Class B stockholders with all the rights of Class A stockholders. Proposal B would have requested the board to place a $75,000 ceiling on compensation to employees. Proposal C would have requested the board to establish a "fairness doctrine" as a guideline in the company's newspaper publishing activities.

3. Act of June 6, 1934, § 14, 48 Stat. 895, as amended, 15 U.S.C. § 78n (1970).

4. 17 C.F.R. § 240.14a–8(a) (1973).

5. 17 C.F.R. § 240.14a–8(c) (1973) excludes certain kinds of proposals from general requirements.

6. 17 C.F.R. § 240.14a–8(d) (1973).

7. The company maintained that, as a Class B stockholder, petitioner did not have the right to vote on general business matters, but only on 30% of the directors and certain other

matters. The company argued that Class B stockholders could not offer proposals on which they could not vote, and that therefore petitioner's proposals could properly be omitted from management's proxy materials.

8. The letter stated in part:
   It would obviously be inconsistent with [the] purpose [of preventing management's proxy materials from being misleading] to require inclusion of a proposal in the proxy materials if the proponent could not legally present it at the meeting. Since there appears to be some basis for [the company's position] this Division will not recommend enforcement action.
   . . .

9. Letter from Neal F. McCoy, Chief Counsel, Securities and Exchange Commission, to John B. Donohue, Jr., March 28, 1972, App. at 25a. See also minutes of Commission meeting of March 23, 1972, App. at 26a.

10. 15 U.S.C. § 78y(a) (1970), quoted in relevant part *infra* note 11.

11. "Any person aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person is a party

members of the Commission's staff, like staff personnel of other agencies, "have no authority individually or collectively to make 'orders,' " [12] and that, on the contrary, "[o]nly the Commission makes orders." [13] Here the Commission made no order on the merits of petitioner's claim; rather, it emphatically "declined to review the staff's position." [14] It follows that what petitioner seeks to have reviewed in this court is not an "order issued by the Commission."

Petitioner relies heavily on Medical Committee for Human Rights v. Securities and Exchange Commission,[15] wherein we reviewed on the merits the Commission's approval of a no-action ruling by its staff.[16] We think, however, that very different jurisdictional consequences flow from the antithetical roles which the Commission played in Medical Committee and here. There, after the staff announced that it would not recommend action respecting a company's omission of a stockholder's proposal from its proxy materials, the Commission examined the staff's no-action determination and accepted it. As our opinion in Medical Committee recounted, the Commission, "after reviewing the petitioner's proxy claim," [17] "exercised its discretion to review [the] controversy," [18] and "approved the rec-ommendation of the [staff] that no objection be raised. . . ." [19] In sum, Medical Committee involved a no-action ruling by the staff which was sanctioned by the Commission, and that, we held, constituted administrative action subject to judicial review.[20]

■ In sharp contrast to that decision is the Commission's refusal here to in any way probe or pass on the staff's no-action position. The distinction is between the Commission's reexamination and affirmance of the staff's conclusion on the one hand, and the Commission's declension of any review or adjudication on the other. We recognized the vitality of that distinction when in Medical Committee we admonished that the availability of judicial review of a staff no-action decision respecting proxy proposals "depends upon the Commission's initial determination to review the staff decision." [21] That precondition is not met here.

### III

■■ We are mindful that administrative inaction may become judicially cognizable,[22] and that yet another question here is whether the Commission erred in flatly refusing to deal with petitioner's claim.[23] But assuming, with-

---

may obtain a review of such order in the United States Court of Appeals within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, . . . ." Id.

12. International Paper Co. v. FPC, 438 F.2d 1349, 1359 (2d Cir. 1971).

13. Id. See also National Automatic Laundry & Cleaning Council v. Shultz, 143 U.S.App. D.C. 274, 284–285, 287, 443 F.2d 689, 699–700, 702 (1971), wherein we drew a clear line between opinions reflecting the definitive views of an agency head and the considerably less authoritative rulings by subordinate officials.

14. See text supra at note 9.

15. 139 U.S.App.D.C. 226, 432 F.2d 659 (1970), vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

16. 139 U.S.App.D.C. at 232–240, 432 F.2d at 665–673.

17. Id. at 230, 432 F.2d at 663.

18. Id. at 241, 432 F.2d at 674.

19. Id. at 230, 432 F.2d at 663, quoting the communication to the parties of the Commission's action. App. 44a–45a. Similarly, the Supreme Court noted in Medical Committee that "[t]he SEC Commissioners granted a request by the Committee that they review the [staff's] decision and affirmed it." 404 U.S. at 405, 92 S.Ct. at 579 (record reference omitted).

20. See note 13, supra.

21. 139 U.S.App.D.C. at 242, 432 F.2d at 675.

22. Environmental Defense Fund v. Hardin, 138 U.S.App.D.C. 391, 397, 428 F.2d 1093, 1099 (1970), and authorities cited in note 29 thereof.

23. This question is, of course, to be distinguished from the question of substantive validity of the staff's no-action decision.

out deciding, that the refusal is otherwise encompassed by Section 25(a),[24] we are not at liberty to override it.

■■ The Securities Exchange Act of 1934 provides that "the Commission may, in its discretion, make such investigations as it deems necessary,"[25] and that "it may in its discretion bring an action"[26] in court. An agency's decision to refrain from an investigation or an enforcement action is generally unreviewable[27] and, as to the agency before us, the specifications of the Act leave no doubt on that score.[28]

■ The Commission, by regulation, has served notice that its informal procedures are ordinarily to be matters of staff activity, and will involve the Commission only when special circumstances so warrant.[29] We discern nothing arbitrary or abusive in this policy as applied in the case at bar. In *Medical Commit-* *tee* "we recognize[d] that there is a legitimate domain of administrative discretion in the proxy area,"[30] carved out by the necessity that the Commission "process a formidable number of proxy statements in limited time and with insufficient manpower."[31] "Obviously," we said, "not all proxy proposals can or should be given detailed consideration by the full Commission;"[32] and we hastened to add that "even the boldest advocates of judicial review recognize that the agencies' internal management decisions and allocations of priorities are not a proper subject of inquiry by the courts."[33]

The Commission offers informal advice by its staff on a vast number of proxy solicitations.[34] Sheer volume of this wholesome activity belies Commission review in every such instance.[35] It must be remembered that a dissatisfied stockholder is free to litigate proxy-so-

---

24. "Agency action," as defined in the Administrative Procedure Act, "includes . . . failure to act," 5 U.S.C. § 551(13) (1970), and the Act commands the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1) (1970). But § 25(a) of the Securities Exchange Act of 1934, which sets our jurisdiction, "applies in terms only to 'orders,' a narrower concept than that of 'agency action' reviewable in district courts. . . ." Independent Brokers-Dealers Trade Ass'n v. SEC, 142 U.S.App.D.C. 384, 395, 442 F.2d 132, 143 (1971).

25. Securities Exchange Act of 1934, § 21(a), 15 U.S.C. § 78u(a) (1970).

26. *Id.* § 21(e), 15 U.S.C. § 78u(e) (1970).

27. Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Jacobsen v. NLRB, 120 F.2d 96, 99–100 (3d Cir. 1941); Goldberg v. Hoffman, 225 F.2d 463, 466 (7th Cir. 1955). The Administrative Procedure Act similarly exempts from judicial review "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1970). See also S.Doc.No.248, 79th Cong., 2d Sess. 275 (1946).

28. Leighton v. SEC, 95 U.S.App.D.C. 217, 218, 221 F.2d 91, 92, cert. denied, 350 U.S. 825, 76 S.Ct. 54, 100 L.Ed. 737 (1955). See also Crooker v. SEC, 161 F.2d 944, 949 (1st Cir. 1947).

29. "The informal procedures of the Commission are largely concerned with the render- ing of advice and assistance by the Commission's staff to members of the public dealing with the Commission. . . . In certain instances an informal statement of the views of the Commission may be obtained. The staff, upon request, or on its motion will generally present questions to the Commission which involve matters of substantial importance and where the issues are novel or highly complex, although the granting of a request for an informal statement by the Commission is entirely within its discretion." 17 C.F.R. § 202.1(d) (1973).

30. 139 U.S.App.D.C. at 241, 432 F.2d at 674.

31. *Id.* (footnote omitted). As we observed, *id.* n. 17, the Supreme Court, in J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), had also recognized this dilemma. See also note 34, *infra.*

32. 139 U.S.App.D.C. at 241, 432 F.2d at 674.

33. *Id.* (footnote omitted).

34. We are informed by the Commission that during fiscal year 1973, the staff processed 7,023 proxy statements and 141 information statements to be submitted to stockholders in lieu of proxy soliciting materials, and with respect to substantially all of these statements furnished a staff letter commenting on its apparent adequacy under the proxy rules.

35. See note 31, *supra.*

licitation questions judicially, with or without prior administrative resort to the staff or the Commission.[36]  It is for the Commission to initially draw the line on administrative review of staff decisions in this area,[37] and we cannot say that its regulation [38] has done so unreasonably.  And finding no legal fault in the Commission's discretionary exercise here, we are powerless to upset it.[39]

Motion to dismiss granted.

36. Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 13, 92 S.Ct. 165, 30 L. Ed.2d 128 (1971) ; Mills v. Electric Auto-Lite Co., 396 U.S. 375, 382, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) ; J. I. Case Co. v. Borak, *supra* note 31, 377 U.S. at 432, 84 S.Ct. 1555, 12 L.Ed.2d 423.

37. See National Automatic Laundry & Cleaning Council v. Shultz, *supra* note 13, 143 U. S.App.D.C. at 287, 443 F.2d at 702.

38. See note 4, *supra*.

39. Compare Schilling v. Rogers, 363 U.S. 666, 670–676, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) ; Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 600–602, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) ; Peoples v. United States Dept. of Agriculture, 138 U.S.App.D.C. 291, 296–297, 427 F.2d 561, 566–567 (1970) ; Scanwell Laboratories v. Shaffer, 137 U.S. App.D.C. 371, 386, 424 F.2d 859, 874 (1970) ; Shawmut Ass'n v. SEC, 146 F.2d 791, 796–797 (1st Cir. 1945) ; Don D. Anderson & Co. v. SEC, 423 F.2d 813, 817 (10th Cir. 1970).