AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2017, et al., Plaintiffs-Appellants,

v.

Harold BROWN, Clifford Alexander, Jr., et al., Defendants-Appellees,

Pan American World Airways, Inc., Intervenor-Appellee.

No. 80–7676.

United States Court of Appeals, Eleventh Circuit.

July 12, 1982.

---

Terrance P. Leiden, Augusta, Ga., Kevin M. Grile, Staff Counsel, American Federation of Government Employees, AFL–CIO, Washington, D. C., for plaintiffs-appellants.

Edmund Booth, Jr., Asst. U. S. Atty., Augusta, Ga., Major Richard Wright, Dept. of Army, Litigation Division, Washington, D. C., for defendants-appellees.

Wm. J. Spriggs, Del Stiltner, Washington, D. C., Neal W. Dickert, Augusta, Ga., for Pan Am.

Michael R. Neds, Dept. of Army, Washington, D. C., for Brown, Alexander, Hilsman, Morris & Stary.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The appellants, Local 2017 of the American Federation of Government Employees [1] and three former civilian employees of the Department of the Army at Fort Gordon, Georgia, filed a complaint in the United States District Court for the Southern District of Georgia, seeking temporary and permanent injunctive relief enjoining the United States Army from contracting out certain work performed by civilian employees at Fort Gordon.[2] The complaint alleged *inter alia* that the defendants' decisions to contract out the work to Pan American World Airways (hereinafter Pan Am) violated sections 806(a)(1) and 806(a)(2)(A) of the Department of Defense Authorization Act, 1980. Pub.L.No.96–107, 93 Stat. 803 (1979), 10 U.S.C. § 2304 note (Supp. III 1979). The District Court dismissed the complaint on the basis that the court lacked jurisdiction, and that the appellants lacked standing to sue. For the reasons stated below we affirm the decision of the District Court.

---

1. Local 2017 is a labor organization representing certain employees of the Department of the Army at Fort Gordon.

2. The Secretaries of Defense and the Army, the Commanding General of the United States Army Training and Doctrine Command, the Commander of the U.S. Army Operations at Fort Gordon, and a contracting officer were each named defendants in their official capacities. Pan American World Airways, Inc., the awardee of a contract to perform the work in question was granted permission by the court to intervene in the action as a defendant.

## I

The general policy of the federal government is to rely on competitive private enterprise to supply the products and services it needs except when comparative cost analysis indicates that procurement from a private source is not as cost-effective as in-house performance.[3] This policy is explicitly set forth in Office of Management and Budget (OMB) Circular No. A–76, 44 Fed. Reg. 20, 556 (1979), *revised*, 45 Fed.Reg. 69,322 (1980).[4] OMB Circular No. A–76 also provides guidelines for the implementation of the policy.

In 1979 Congress enacted the Department of Defense Authorization Act, 1980. Pub.L. No.96–107, 93 Stat. 803 (1979), 10 U.S.C. § 2304 note (Supp. III 1979).[5] Section 806(a) of the Act addressed the matter of the Department of Defense converting from in-house performance of commercial and industrial functions to performance of these functions by private contractor. Section 806(a) had the effect of elevating certain aspects of Circular A–76 to the status of law. Specifically, this provision stated that no functions being performed by Department of Defense personnel could be converted to performance by a private contractor: (1) to circumvent any civilian personnel ceiling; (2) without prior notification to Congress of the decision to study the function for possible conversion; and (3)

without certification to Congress of the in-house cost calculation.[6]

The present case arose from the decision by the Department of the Army to contract out certain functions performed by the Directorate of Industrial Operations and Housing at Fort Gordon, Georgia. These functions included housing, maintenance, supply and service, and transportation. Prior to making the contracting out decision the Army conducted an analysis of the functions to determine whether a cost savings could in fact be achieved by conversion to a private contractor. As a part of this analysis the Army first performed a study to determine the most efficient and cost-effective organization for in-house performance of these functions. The Army then solicited and received cost proposals from private contractors for the performance of the functions. The cost proposal offered by Pan Am was determined to be the lowest of all the contractors. The Army compared Pan Am's cost proposal with the cost calculation for in-house performance and determined that an estimated 58-month savings of approximately $32 million could be achieved by contracting with Pan Am for the performance of the functions.

The results of the Army's study were reported to Congress, including a certification that the Army's in-house cost calcula-

---

**3.** In-house performance is also allowed when national defense needs require it; contract performance would cause unacceptable delay or disruption of an essential program; or no satisfactory private source exists that is capable of providing the required product or service.

**4.** The government's policy of acquiring needed products and services from private sources was first expressed in Bureau of Budget Bulletins issued in 1955, 1957 and 1960. In 1966 Circular No. A–76 was issued and for the first time, prescribed the policy and implementing guidelines in a permanent directive. The Circular in effect at the time the present case arose was issued March 29, 1979. This circular is not materially different from the current version issued September 26, 1980.

**5.** This Act was an appropriations statute for fiscal year 1980 only. It thus has no present force or effect.

**6.** Section 806(a) read:

> (a) During fiscal year 1980, no commercial or industrial type function of the Department of Defense that on the date of the enactment of this Act is being performed by Department of Defense personnel may be converted to performance by a private contractor—
>
> (1) to circumvent any civilian personnel ceiling; and
>
> (2) unless the Secretary of Defense shall provide to the Congress in a timely manner—
>
>> (a) notification of any decision to study such commercial or industrial type function for possible performance by a private contractor, together with a certification that the government in-house cost calculation for the function is based on an estimate of the most efficient and cost effective organization for in-house performance;

tion for the functions was based on an estimate of the most efficient and cost-effective organization for in-house performance. The Army's tentative decision to contract out to Pan Am was also reported to Congress. Congress raised no objections to the in-house cost calculations or to the decision to contract out.

The Army, consequently, awarded the contract to Pan Am. On the same day that the contract was awarded reduction-in-force notices were sent to 618 civilian employees at Fort Gordon whose positions would be eliminated because of the contract.[7] The appellants then brought this action to enjoin the Army from proceeding with the conversion to Pan Am.

The appellant's complaint alleged that the conversion violated Public Law 96–107, Section 806(a) because it was done to circumvent civilian personnel ceilings, and because the Army's in-house cost calculations failed to provide a proper estimate of the most efficient and cost-effective organization for in-house performance.

The District Court did not consider the complaint on the merits, but rather held a hearing on the threshold issues of jurisdiction and standing. The court concluded that it was without jurisdiction because the Army's conversion decision was not subject to judicial review. The court further concluded that the plaintiffs lacked standing because they were not within the zone of interests protected by Section 806. Upon the dismissal of the plaintiff's complaint this appeal was taken.

## II

The two issues before us on appeal are first, whether district courts have judicial review over alleged violations of Section 806(a) and second, whether affected civilian employees and their labor organization have standing under Section 806(a) to challenge a decision of the Department of the Army to convert from in-house performance of certain base functions to performance by private contractor.

The appellants argue that pursuant to the Administrative Procedure Act (APA)[8] judicial review of the Army's decision is available. They contend that Public Law 96–107 evinces no statutory preclusion of judicial review, and furthermore, that the Army's contracting decision is not committed to agency discretion by law.

There is no question that the APA affords judicial review of agency action to any person adversely affected or aggrieved by an agency action[9] except to the extent that, (1) statutes preclude judicial review, or (2) agency action is committed to agency discretion by law.[10] Public Law 96–107 contains no explicit preclusion of judicial review such that the first exception is clearly inapplicable to the present case.[11] Whether the second exception applies depends upon an analysis of the nature of the agency decision involved. As we stated in *Bullard v. Webster*, 623 F.2d 1042 (5th Cir. 1980):

> In the absence of a statute that explicitly precludes judicial review, an agency action is committed to the agency's discretion and is not reviewable when an evaluation of the legislative scheme as well as the practical and policy implications demonstrate that review should not be allowed.

623 F.2d at 1046. In *Bullard* we indicated three criteria useful in making a determina-

---

**7.** As was required under the contract Pan Am offered all displaced civilian employees the right of first refusal for employment openings under its contract in positions for which they were qualified. Each of the individual plaintiffs in this action was offered a position with Pan Am.

**8.** 5 U.S.C. §§ 701–706 (1976).

**9.** 5 U.S.C. § 702 (1976).

**10.** 5 U.S.C. § 701(a) (1976).

**11.** In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) the Supreme Court noted that "the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation . . ." and that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review.".

tion of whether an action is committed to agency discretion: (1) the broad discretion given an agency in a particular area of operation, (2) the extent to which the challenged action is the product of political, economic or managerial choices that are inherently not subject to judicial review, and (3) the extent to which the challenged agency action is based on some special knowledge or expertise.[12]  *Id.*  The application of these criteria to the case at hand convinces us that the decision to contract out was indeed committed to the discretion of the Army and is thus not subject to judicial review.

We agree with the finding of the District Court that Section 806 vests the Army with broad discretion to make contracting out decisions and provides no legal standard for the court to apply.  As the District Court stated:

> Section 806 is a statement of policy and legislative intent.  It is a mandate from the legislative branch to the executive branch, but it is not replete with formulae or discernable (sic) guidelines against which the agency decision may be measured.

*AFGE, Local 2017 v. Brown,* No. CV 180–136 at 12 (S.D.Ga. August 29, 1980).

There is no dispute that in enacting Section 806 Congress sought to elevate some aspects of existing practice and procedure under OMB Circular A–76 to the status of law.[13]  Section 806 in no way affected the nature of the conversion decision and imposed no new standards to guide the military's discretion.  Except for the requirements of congressional notification and reporting, there were no restrictions on conversions in Section 806 that are not in OMB Circular A–76.  Indeed, the OMB Circular is far more detailed and offers far more by way of guidelines for decisions than does

Section 806.  Thus, a number of cases concerning Army conversion decisions made pursuant to OMB Circular A–76 are extremely persuasive.  All of the courts which have considered the issue have held that conversion decisions made by the Department of Defense officials under Circular A–76 are committed to agency discretion and are not subject to judicial review.  *Local 2855, AFGE v. United States,* 602 F.2d 574 (3d Cir. 1979);  *American Federation of Government Employees v. Stetson,* C.A. No. 77–2146 (D.D.C. July 25, 1979);  *American Federation of Government Employees v. Hoffmann,* 427 F.Supp. 1048, 1082–84 (N.D.Ala.1976); and *AFGE, Local 1688 v. Dunn,* No. A–75–156 (D.Alaska Sept. 30, 1975), *aff'd on other grounds,* 561 F.2d 1310 (9th Cir. 1977).

In *Local 2855, AFGE,* the Third Circuit observed that pursuant to *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, (1971) the committed to agency discretion exception to judicial review is intended to be "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' [citation omitted]."  602 F.2d at 578–79.  In applying this rule to OMB Circular A–76 the court concluded that the circular failed "to provide meaningful criteria against which a court may analyze the Army's decision."  *Id.*  In a similar vein the District Court in the case at hand concluded correctly that because Section 806 lacked discernible guidelines "a District Judge would have no law to apply in determining whether or not a decision made by the agency was correct."  *AFGE, Local 2017* at 11–12.

The Army's contracting out decision is also an inappropriate subject for judicial review because the decision involves military and managerial choices inherently un-

---

12. These three criteria were taken from the Third Circuit's opinion in *Local 2855, AFGE v. United States,* 602 F.2d 574 (3d Cir. 1979).  *Local 2855* essentially raised the same issue as the present case.  The court held that the Army's contracting out decision was committed to agency discretion and thus not subject to judicial review.

13. Our review of the legislative history convinces us that the overriding concern of Congress was to provide for increased congressional review and oversight of conversion decisions.

suitable for the judiciary to consider. As the Supreme Court noted in *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1954) "[j]udges are not in the business of running the Army .... Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters." 345 U.S. at 93–4, 73 S.Ct. at 540.[14]

In addition, the contracting out decision is based on the special expertise of the Army officials involved. Calculations of the most efficient and cost-effective way to perform a function at a military installation "are matters on which experts may disagree; they involve nice issues of judgment and choice." *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). These issues are best resolved by the Army analysts rather than by the courts since, in the words of Justice Frankfurter, they "do not present questions of an essentially legal nature in the sense that legal education and lawyers' learning afford peculiar competence for their adjustment." *Driscoll v. Edison Light & Power Co.*, 307 U.S. 104, 122, 59 S.Ct. 715, 724 (1939) (Frankfurter, J. concurring).[15]

The appellants argue further that the District Court erred in holding that they lacked standing to challenge the Army's contracting out decision. In view of our determination that the District Court was correct in finding that it lacked jurisdiction it is unnecessary to address the question of standing.

### III

The judgment of the District Court is AFFIRMED.

**14.** We expressed similar sentiments in *Mindes v. Seaman*, 453 F.2d 197, 199 (5th Cir. 1971) when we stated:

> Traditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions .... [T]he greatest reluctance to accord judicial review has stemmed from the proper concern that such review might stulti-fy the military in the performance of its vital mission.

**15.** We should also note that if a contracting out decision is in fact made on the basis of an erroneous calculation of the cost of in-house performance, or to circumvent civilian personnel ceilings, affected civilian employees and their labor representative are always free to bring such discrepancies to the attention of Congress and to seek legislative relief.