INVESTMENT COMPANY INSTITUTE

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, an agency of the United States, et al., Appellants.

No. 82–1721.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 3, 1983.
Decided Feb. 28, 1984.

Marc Johnston, Attorney, Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellants.

David M. Miles, Washington, D.C., with whom Harvey L. Pitt, Henry A. Hubschman and James H. Schropp, Washington, D.C., were on brief, for appellee.

Edmund C. Case, Boston, Mass., with whom Martha S. Samuelson, Boston, Mass., was on brief, for amicus curiae urging reversal.

Before WRIGHT, BORK and SCALIA, Circuit Judges.

Opinion PER CURIAM.

Dissenting opinion filed by Circuit Judge J. SKELLY WRIGHT.

PER CURIAM:

The Federal Deposit Insurance Corporation appeals from a district court order—in the form of a discovery order—compelling it to enjoin a third party's allegedly illegal conduct and to consider, then rule upon the merits of, a petition filed by the Investment Company Institute which seeks to have that third party's conduct declared unlawful. We find the district court's order an injunction appealable under 28 U.S.C. § 1292(a)(1) (1976). We also hold that the substance of the court order exceeded that court's power and authority under the federal banking laws.

I.

In the spring of 1982, the Boston Five Cents Savings Bank ("Bank") devised a plan to sell mutual fund shares through wholly owned subsidiaries. On April 13, appellee, the Investment Company Institute ("ICI"), petitioned the Federal Deposit Insurance Corporation ("FDIC") to declare this plan unlawful and to prevent the Bank from implementing it. FDIC held a public

meeting of its Board of Directors on May 17 and declined to decide the merits of ICI's petition. It informed appellee of this action by letter of May 20, pointing out that the Bank had not yet submitted any application for approval of mutual fund activities.

Upon receiving FDIC's letter, ICI filed the present suit claiming (1) an abuse of discretion by FDIC in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), and (2) a violation of the Sunshine Act, 5 U.S.C. § 552b (1982), based upon the allegation that the public meeting was merely *pro forma* and validated action that had been agreed upon in private beforehand. On May 23, appellee moved the court to shorten the discovery period, to require the production of certain documents by May 27, and to allow the scheduling of three depositions for May 28. The district court denied FDIC's ensuing request for a protective order, and granted all ICI's requests for expedited discovery. In early June, ICI moved to compel FDIC to produce several documents and answers to deposition questions, at the same time moving to shorten FDIC's time for response to the motion to four days. The district court granted the motion to shorten without an opportunity for reply by appellants.

FDIC did respond within the four-day limit, however, and requested a hearing on the motion. The district court denied the requested hearing, and on June 22, issued a discovery order requiring compliance with all ICI's discovery demands within three days. Appellant moved to dismiss or to stay the Order, furthermore offering to reconsider ICI's original petition at a *de novo* meeting of the Board. ICI responded that the suggested *de novo* meeting would not provide the "principal affirmative relief sought" by its complaint, in that the Board would retain discretion not to consider the *merits* of the petition, even in the event that a new meeting were held. On June 25, the district court signed an Order, drafted and submitted by ICI, and issued without any accompanying findings, explanation, or written opinion, reading in relevant part as follows:

ORDERED, that defendants' motion to dismiss this action or, in the alternative, for reconsideration of this Court's Order of June 22, 1982, be and hereby is, DENIED, and it is

FURTHER ORDERED, that defendant Federal Deposit Insurance Corporation shall convene a meeting open to public observation, as required by the Government in the Sunshine Act, to consider the Petition of the Investment Company Institute with respect to the Boston Five Cents Savings Bank (the "Bank") and shall (1) rule upon the merits of each violation of law alleged in the plaintiff's April 13, 1982 Petition; (2) afford all interested persons, including the plaintiff, an opportunity to be heard in connection with the plaintiff's Petition; (3) issue a written opinion on the merits of the plaintiff's Petition, which shall be subject to review by this Court; and (4) require the Bank, its subsidiaries, agents, representatives and all persons or entities acting in concert with the Bank, not to proceed to implement its plan to sell shares of any mutual fund to the public until the FDIC has ruled on the plaintiff's Petition, and it is

FURTHER ORDERED, that further proceedings on the plaintiff's complaint, and the effectiveness of this Court's June 22, 1982, Order, are stayed pending the filing with the Court of defendants' ruling on the plaintiff's Petition, in accordance with this Order, and it is

FURTHER ORDERED, that defendants shall produce forthwith to the Court under seal for safekeeping all documents covered by the Court's May 27, 1982 and June 22, 1982 Orders, and it is

FURTHER ORDERED, that defendants shall preserve all records relating to the Bank or the Institute's Petition until further order of this Court, and it is

FURTHER ORDERED, that this Court be and hereby retains jurisdiction over this action, pending further order of this Court.

*Investment Company Institute v. Federal Deposit Insurance Corp.,* No. 82–1408

(D.D.C. June 25, 1982). FDIC immediately appealed this Order, filing a notice of appeal on June 25 and requesting a stay pending appeal.

On June 29, the district court denied the request for stay and included in its denial Order the finding that "[the] June 25, 1982 Order is a discovery-related order which is neither a 'final decision' nor a 'collateral order' subject to appellate review," and that "the defendants may relieve themselves of the obligations set forth in this Court's June 25, 1982 Order merely by complying with this Court's June 22 Order."

■ The district court's Order of June 25 is the subject of the present appeal. Appellee asserts lack of jurisdiction on the ground that it is, as the district court asserted, a "discovery-related order" and therefore interlocutory and non-appealable. *See* 7 J. Moore, *Moore's Federal Practice* ¶ 65.21 (1983); 4 *id.* ¶ 26.83[9.–1] (1983); 9 *id.* ¶¶ 110.3[2], 110.20[1] (1983). This argument cannot be sustained on the face of the Order. While some of its provisions relate to earlier discovery orders or to the preservation of records for future discovery, its central provision, the second paragraph in the excerpt quoted above, has nothing to do with discovery, and requires action by FDIC unrelated to the conduct or management of the pending litigation. It is the sort of mandate that courts commonly issue in final disposition of a case, pursuant to their authority to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1).[1] On its face, therefore, it is an injunction appealable under 28 U.S.C. § 1292(a)(1).

Appellee asserts, however, that this provision did not represent a categorical mandate, but rather merely sets forth an optional performance that appellants could choose to render instead of complying with the discovery order. This interpretation is not supported by the facts. The June 25 Order is categorical in its terms. It stays the June 22 discovery order (requiring instead that the requested documents be deposited with the court) and contains no suggestion that the new mandate can be disregarded, and the earlier order resurrected, at appellants' option. Its mandatory character was reinforced by the district judge's threat to impose sanctions on the FDIC attorneys under 28 U.S.C. § 1927 (1976) if it was not obeyed. *See* Joint Appendix ("J.A.") at 421. Both parties understood the Order as a categorical injunction at the time. J.A. at 416–19. Nothing in the text of the Order or the record supports appellee's interpretation except the court's statement in the June 29 post-appeal order that "the defendants may relieve themselves of the obligations set forth in this Court's June 25, 1982 Order merely by complying with this Court's June 22 Order." Even if this is taken to be an interpretation rather than (as seems more compatible with the facts) a new prescription, it cannot be dispositive of the Order's original meaning, and, hence, the Order's appealability at the time the appeal was filed. In our view, the June 25 Order was unambiguously a categorical injunction.

Appellee has also argued that appellants should not be able to render a discovery order appealable by proposing that the court replace it with an alternative order and thereafter appealing the alternative. Brief for Appellee at 32. As our recitation of the facts indicates, however, what was imposed upon appellants by the June 25 Order went well beyond what appellants had proposed, and appellee was well aware of this fact. Specifically, the Order eliminated appellee's principal objection to the proposal by requiring the Board to reach and determine the *merits* of the ICI petition. That is, and was obviously known to be, quite different from appellants' offer merely to reconsider the petition—which would again permit denial on grounds of ripeness or investigative discretion.

■ It remains to consider the effect of the statement in the June 29 Order as a new prescription and thus as a *modification*

---

1. This factor distinguishes *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), relied upon by the dissent, which involved an attempt to appeal a discovery order.

of the June 25 Order. FDIC's appeal of the June 25 Order was perfected on June 25. See Fed.R.App.P. 3(a) advisory committee note (rule requires "nothing other than the filing of a notice of appeal in the district court for the perfection of the appeal"). Although modification of the order appealed from cannot, of course, retroactively invalidate a perfected appeal, it might render the appeal moot. The district court's June 29 Order, however, does not have that effect.

First, the June 29 Order in no sense rendered the *case* moot. There remains a live controversy between the parties. The most the June 29 Order can even be alleged to have done was to render the order appealed from no longer appealable. It did not eliminate the case or controversy, which will continue to be litigated. For us to decide the appeal, therefore, would not be to render an advisory opinion, for we are able to give "effectual relief" to appellants. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 514, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

Moreover, even if we view the controversy over the particular June 25 injunction, and hence the appeal (as opposed to the case), as having become moot by virtue of the June 29 Order, we may decide "to maintain the appeal, in the interest of sound judicial administration," if "a recurrence or a continuation of what is essentially the same legal dispute" is predictable. *Alton & Southern Ry. v. International Ass'n of Machinists & Aerospace Workers,* 463 F.2d 872, 879 (D.C.Cir.1972).[2] The present situation justifies such treatment. The central legal dispute in the appeal of the original order has not been ended, even temporarily. ICI continues to assert, and FDIC to contest, the court's authority to compel action re-

garding ICI's petition, and that issue will continue to inhere in the action if not resolved upon this appeal. We conclude, therefore, that we should hear the appeal of the June 25 Order.

We turn, then, to the merits.

## II.

The June 25 injunction was validly issued only if the statutory scheme which defines the FDIC's responsibilities and the judiciary's role in monitoring the FDIC's performance authorizes a court to direct the FDIC to (1) take up and decide the merits of a petition seeking a declaration that a third party's conduct is unlawful and (2) meanwhile to order the third party to halt its allegedly unlawful conduct. We first decide that the district court had no jurisdiction to order the FDIC to direct the bank to halt its challenged conduct. We then decide that the statutory scheme commits to agency discretion the FDIC's decision not to take up and decide ICI's petition. We feel free to dispose of the latter issue because the parties had a full opportunity to brief it. *See Smith v. Vulcan Iron Works,* 165 U.S. 518, 525, 17 S.Ct. 407, 410, 41 L.Ed. 810 (1897) (merits may be decided by court of appeals on appeal of interlocutory injunction). *See also Myers v. Bethlehem Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3921 (1977). Thus, our disposition not only invalidates the injunction but disposes of ICI's case insofar as it challenges the FDIC's refusal to take up its petition; only the Sunshine Act claim remains.

ICI's petition to the FDIC asked that the FDIC declare unlawful the creation of a mutual fund by the Boston Five Cents Savings Bank.[3] As read by the FDIC in its

---

**2.** The dissent evidently relies upon the fact that in *Alton,* we found there was a mere possibility of recurrence and thus did not entertain the appeal. The difference is that in this case, unlike *Alton,* the relief afforded by the district court's injunction was precisely the relief sought in the complaint, so that the issue of the permissibility of the injunction is not merely

likely to recur but *must* recur if the complaint is maintained.

**3.** The petition may also have requested that the FDIC conduct a general rulemaking proceeding on the lawfulness of conduct like that challenged by ICI. *See* Brief for Appellee at 6. In this litigation, however, ICI has sought only to overturn the FDIC's Final Order dated May 20, 1982, and that order focused solely on ICI's

Final Order of May 20, 1982, refusing to take up the petition on its merits, the petition asked the FDIC to refrain from aiding the Bank in its plans, to initiate cease and desist proceedings, and to take any other appropriate action. J.A. at 26–27. The only general authority possessed by the FDIC to give ICI the requested relief is found in section 1818 of the federal banking laws. 12 U.S.C. § 1818 (1982). ICI has neither disputed the FDIC's reading of its petition nor pointed to any other provision that might authorize the FDIC to take the actions demanded in its complaint. The scheme established in section 1818 must therefore govern the lawfulness of the district court's June 25 injunction.[4]

■ Section 1818 surrounds the power it grants to the FDIC over federally insured banks with procedural safeguards of the banks' rights. Before the FDIC may issue a cease and desist order under the section, it must give the affected bank notice of the practices it considers unlawful and an adjudicatory-type hearing on the issue of unlawfulness. An FDIC decision to issue a cease and desist order is subject to review only in the courts of appeals. If the FDIC considers it necessary to halt the allegedly unlawful bank practice pending completion of the adjudicatory hearing, it may issue a temporary cease and desist order, but it may do so only if it concludes that the challenged practice is likely to result in insolvency or a serious weakening of the financial condition of the bank.

Judicial power over FDIC orders under section 1818 is carefully limited. Section 1818(i)(1) states: "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." With respect to cease and desist orders, the section provides for three exceptions to this sweeping prohibition on judicial interference with the exercise of FDIC powers. First, a permanent cease and desist order may generally be reviewed in the courts of appeals. 12 U.S.C. § 1818(h)(2). Second, a bank may apply to a district court for relief from a temporary cease and desist order. 12 U.S.C. § 1818(c)(2). Third, the FDIC may apply to a district court to enforce a cease and desist order. 12 U.S.C. § 1818(d), (i)(1). Each exception presupposes an outstanding temporary or permanent cease and desist order; section 1818(i)(1)'s general bar to jurisdiction thus prohibits a court from compelling issuance of a temporary or permanent cease and desist order. See A.G. Becker Inc. v. Board of Governors, 519 F.Supp. 602, 608 (D.D.C.1981), rev'd on other grounds, 693 F.2d 136 (D.C.Cir.1982).

■ This statutory scheme makes clear that the district court's June 25 injunction

---

challenge to the Boston Five Cents Savings Bank's conduct, saying nothing about any possible rulemaking. J.A. at 26–27. We read ICI's complaint in this case to attack only the FDIC's refusal to consider a request for declaratory and enforcement action.

It is worth noting that ICI filed an entirely separate request for rulemaking on July 27, 1982, and although the FDIC has not acted on that request, on August 23, 1982, it issued an interpretative ruling on one of the key legal questions raised by ICI. See 47 Fed.Reg. 38,-984 (1982) (section 21 of Glass-Steagall Act "does not, by its terms, prohibit an insured nonmember bank from establishing an affiliate relationship with, or organizing or acquiring, a subsidiary corporation" that engages in the securities business). In addition, on September 20, 1982, the FDIC issued an advance notice of proposed rulemaking to solicit comments on the need for a rule to restrict insured nonmem-

ber banks' having subsidiaries in the securities business. 47 Fed.Reg. 42,121 (1982).

4. Section 1818 gives the FDIC power to take various actions other than issue cease and desist orders (such as terminating the insured status of a bank), but the litigants here have focused on the cease and desist powers, and in any event, our analysis applies equally to all of the FDIC's section 1818 enforcement powers. For example, the notice, hearing, and judicial review provisions applicable to the FDIC's powers to terminate a bank's insured status and to suspend or remove a bank's directors or officers very closely resemble, and partly overlap, those applicable to cease and desist orders. See 12 U.S.C. § 1818(a), (e), (g), (h). In addition, of course, section 1818(i)(1), discussed below, applies to any FDIC notice or order issued under section 1818.

is invalid to the extent that it ordered the FDIC to prevent the Boston Five Cents Savings Bank from marketing its new mutual fund. It is true that the June 25 Order does not in terms refer to section 1818 or to cease and desist orders, but compelling the issuance of a temporary cease and desist order is precisely what the June 25 injunction does, and section 1818's circumscription of federal court jurisdiction would be seriously undermined, if not rendered wholly ineffectual, were it read not to apply to an injunction that has exactly the effect it was meant to prohibit.

■ The June 25 Order not only violates section 1818's prohibition of judicial intervention, but in the process, directs agency action that itself violates section 1818's standards and procedures for issuing temporary cease and desist orders, requirements enacted "to protect both the institutions involved and their officials and the depository savers and others interested in the sound and effective operation of the financial institutions." S.Rep. No. 1482, 89th Cong., 2d Sess. 1 (1966), U.S.Code Cong. & Admin.News, pp. 3532, 3533. Section 1818 requires a showing that there is a reasonable, not merely a theoretical, possibility of insolvency or other serious financial weakening of a bank before the FDIC may issue a temporary cease and desist order. See S.Rep. No. 1482, supra, at 22. There has been no such evidence in this case. More important, a temporary cease and desist order may be issued only when the FDIC has initiated formal proceedings for the issuance of a permanent cease and desist order, a fundamental requirement of the statutory scheme because it ensures the affected bank its day in court by giving it notice, a hearing, and a right to judicial review. No proceedings have been initiated against the Boston Five Cents Savings Bank in this case, and the Bank has had no opportunity, before the FDIC or the courts, to contest the issuance of an order directed against its conduct. Finally, section 1818(m) makes clear that the FDIC must

take care not to usurp state banking agencies' regulatory authority over state banks; it requires that the FDIC notify the appropriate state authority of its intention to institute cease and desist proceedings and give the state authority an appropriate opportunity to take corrective action before exercising its own authority.[5] The June 25 Order directs the FDIC to issue a cease and desist order forthwith, entirely disregarding the primary role Congress intended state agencies to play in the regulation of state banks.

In short, it is abundantly clear that the district court's order was inconsistent not only with the strict jurisdictional restrictions in section 1818 but also with the entire scheme established in the section. We now turn to the remainder of the June 25 Order under review here.

■ That portion of the June 25 Order which directed the FDIC to take up and rule on the merits of ICI's petition effectively gave ICI the relief it sought in its complaint, which alleged that the Administrative Procedure Act and the Sunshine Act were violated by the FDIC's refusal to consider the merits of the petition. Since the Sunshine Act alone cannot support setting aside the FDIC's decision, see 5 U.S.C. § 552b(h)(2) (1982), the relief sought in ICI's complaint, and awarded in the June 25 Order, can be justified only if the FDIC's refusal may be declared unlawful under the Administrative Procedure Act. The FDIC contends that the district court was without authority to order the FDIC to rule on the merits of ICI's petition because the FDIC decision was "committed to agency discretion" and hence not reviewable under the APA. 5 U.S.C. § 701(a) (1982). We agree.

The Administrative Procedure Act does not apply to agency action that is committed to agency discretion or made unreviewable by statute. We need not decide whether the second exception applies; that is, whether the presumption favoring judicial review has been overcome by clear and convincing evidence of congressional intent

---

**5.** Subsection (m) does not apply to termination of insured status, 12 U.S.C. § 1818(a), or to certain suspensions or removals of directors or officers, 12 U.S.C. § 1818(e)(2), (g).

to preclude review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). We are convinced that the FDIC decision not to consider the merits of ICI's petition is agency action that has been committed to agency discretion.

■■■ Whether a particular agency decision is committed to agency discretion depends, broadly speaking, on whether there is law to apply in making and reviewing the decision, which in turn depends, we have said, on "pragmatic considerations as to whether an agency determination is the proper subject of judicial review." *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1043 (D.C.Cir.1979).[6] Among the important considerations are "the need for judicial supervision to safeguard the interests of the plaintiffs[,] the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role[,] and the appropriateness of the issues raised for judicial review." *Id.* at 1044. Each consideration points to nonreviewability of the FDIC's refusal to take up ICI's petition.

■■■ In this case, there is no significant need for judicial supervision to safeguard ICI's rights. In *New York Stock Exchange v. Bloom,* 562 F.2d 736 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978), this court held that judicial review was not needed to protect the rights of ICI, whose position in that case was virtually identical to its position here. The court gave two reasons for this conclusion. First, since there was no agency decision applicable to ICI, ICI was not exposed to any burden of compliance or risk of penalty for noncompliance. 562 F.2d at 741. Second, nothing was shown to cast doubt on the ability of ICI to bring an action directly against the bank whose conduct it thought unlawful, an action that, though possibly inconvenient, was an alter-

native form of relief. *Id.* at 742. Both these reasons apply with full force in this case, and we therefore conclude, as we did in the earlier case, that the hardship to ICI is not substantial enough to justify judicial review.

Regarding the second consideration—whether review would hamper agency effectiveness—we have a less than fully satisfactory basis for making an independent judgment. The FDIC informs us that it supervises some nine thousand state-chartered banks and conducts some twenty thousand bank examinations each year. It informs us, too, that several hundred banks are in danger of failure and therefore require especially close monitoring. It tells us the exercise of its heavy and profound regulatory responsibilities would be severely disrupted if every person seeking FDIC action on a petition seeking enforcement action could invoke judicial review of a simple FDIC refusal to consider the merits of the petition. Brief for Appellants at 40–41. ICI makes no response to these representations, and we find them quite plausible. *See* C. Golembe & D. Holland, *Federal Regulation of Banking* (1981) (describing FDIC responsibilities and activities and giving statistics on banks under FDIC supervision). We have no ground to challenge the claim of disruptiveness, and because the issue is not decisive, there is no need to pursue the claim.

ICI's petition, as noted above, was a request that the FDIC take enforcement action under section 1818. The FDIC's response was a simple refusal to consider the petition on its merits. For several reasons, that refusal is not an appropriate issue for judicial review. "An agency's decision to refrain from an investigation or an enforcement action is generally unreviewable ...." *Kixmiller v. SEC,* 492 F.2d 641, 645

6. The majority members of this panel have; in another case, made plain their discomfort with the test for whether an agency decision is committed to agency discretion articulated by the court in *Natural Resources Defense Council v. SEC ("NRDC"). See Chaney v. Heckler,* 718 F.2d 1174 (D.C.Cir.1983), *reh. denied,* 724 F.2d 1030 (D.C.Cir.1984) (Statement Dissenting from the Denial of Rehearing En Banc by Scalia, J., joined by Wilkey, Bork, Starr, JJ.). Nonetheless, *NRDC* remains the law of this circuit and we are bound to apply it as best we can.

(D.C.Cir.1974); [7] *see Action on Safety & Health v. FTC,* 498 F.2d 757, 762–63 (D.C. Cir.1974). *See also Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 504–05, 97 S.Ct. 2411, 2420, 53 L.Ed.2d 506 (1977). The FDIC's decision at issue here comes squarely within this general rule and not within any exception to the rule of which we are aware. Thus, agency action is not the exclusive form of relief for ICI's complaint, as it was for the complaint at issue in *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), there being no reason to believe that ICI could not bring an action directly against the bank whose conduct it thinks unlawful. *See supra* p. 526; *New York Stock Exchange v. Bloom,* 562 F.2d at 742. Nor has the FDIC initiated an action that it subsequently decided to terminate, as the agency did in *City of Chicago v. United States,* 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969). Nor is there the slightest evidence of a consistent policy of abdicating a statutory duty, as was found in *Adams v. Richardson,* 480 F.2d 1159 (D.C.Cir.1973) (en banc). The FDIC decision here was a simple exercise of "prosecutorial" discretion not to invoke a non-exclusive remedy for allegedly unlawful conduct. That discretion about how to exercise a "general enforcement power," *Action on Safety & Health v. FTC,* 498 F.2d at 762, is inappropriate for review where

there are no standards to govern the agency exercise of discretion, the statutory language is wholly permissive [8], the statute itself severely limits the scope of judicial review, and the agency decision involves budgetary constraints and enforcement priorities that we are ill-equipped to evaluate.

Thus, there is "no law to apply" in reviewing a simple refusal to take enforcement action. *Southern Ry. v. Seaboard Allied Milling Corp.,* 442 U.S. at 455, 99 S.Ct. at 2395. There might, of course, be some law to apply in deciding whether the practice challenged by ICI is unlawful; it is even imaginable that there might be law to apply in deciding whether the practice is unsafe or unsound. But the FDIC has made no such determination. It has merely decided not to exercise its power under section 1818, and the statute lays down no standards to guide the FDIC in deciding whether to make a finding on the issues of unlawfulness, unsoundness, or unsafeness, let alone in deciding whether to take enforcement action once it has made such a finding. There is, in short, no basis in the statute for a court to use in reviewing the FDIC decision at issue in this case.

This case does not involve a situation like that in *A.G. Becker Inc. v. Board of Governors,* the one case ICI cites in support of review. There the Federal Reserve Board "took up the matter" presented by the petition before it and rendered a decision based

---

**7.** Since a single instance of review does not establish general reviewability, the statement in *Kixmiller,* supported by judicial practice of nonintervention in enforcement matters, is not contrary to the panel majority's holding in *Chaney v. Heckler,* 718 F.2d 1174 (D.C.Cir.1983). There is language in *Chaney* contrary to the statement in *Kixmiller*—assuming that a "presumption of reviewability" for enforcement matters (asserted by *Chaney*) means that enforcement matters are generally reviewable. We are, of course, not bound by that dictum and we find *Kixmiller* a more accurate statement. If, on the other hand, as the dissent appears to assert, the contrary language in *Chaney* must be regarded as a holding, there is no reason not to regard the similarly general language of *Kixmiller* to be a holding as well— in which case it would be *Chaney,* rather than our opinion, which departs from the law of this circuit without the required *en banc* approval.

**8.** While the section mandates that the FDIC comply with the notice and hearing requirements for taking action against a bank, the section nowhere mandates that the FDIC take any action. Every authorization of FDIC action in the long section uses the language of "may" rather than "shall": it says, for example, that the FDIC "may" terminate a bank's insured status or initiate cease and desist proceedings or issue a temporary cease and desist order. 12 U.S.C. § 1818(a), (b). So too does the relevant congressional committee report. *See* S.Rep. No. 1482, *supra. See also American Federation of Government Employees, Local 2017 v. Brown,* 680 F.2d 722 (11th Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 728, 74 L.Ed.2d 952 (1983); *Local 2855, AFGE (AFL-CIO) v. United States,* 602 F.2d 574, 578–79 (3d Cir.1979).

on "a purely legal analysis." 519 F.Supp. at 605, 608. That decision could easily be reviewed because there was an agency determination on a factual or legal question to review and law to apply in reviewing it. Here, by contrast, it is the FDIC decision not to take up the matter that is at issue, and there is no FDIC determination on any factual or legal question at all, let alone one based on a purely legal question, to review. The *A.G. Becker* court itself concluded, moreover, that, although the Board's legal determination could be reviewed, section 1818 "leaves the Board with discretion to decide when to initiate enforcement proceedings" and "[t]he part of the Board's decision which rejected any enforcement proceeding against [the bank] is not subject to review ...." *Id.* at 609, 610 n. 8.

In sum, the FDIC decision not to consider ICI's petition on the merits cannot be reviewed under the APA, as it must be considered committed to agency discretion. The one case we know of that has addressed this issue has reached the same result. *Gordon v. Heimann,* 514 F.Supp. 659 (N.D.Ga. 1980). And, as shown above, all of the considerations important to determining whether this exception to APA review applies to the FDIC decision here support our conclusion.

The unreviewability of ICI's Administrative Procedure Act claims leaves only the Sunshine Act claim in the case. We indicate no view on any of the legal issues that might be raised in litigating that claim. We do note, however, that since the FDIC's offer to hold a new meeting on ICI's petition would nullify the effect of the initial meeting of May 17, 1982, that offer, if it stands on remand, would moot ICI's only

remaining claim and require dismissal of the rest of this suit.

J. SKELLY WRIGHT, Circuit Judge, dissenting:

I would stay further action in this appeal until the District Court conducts contempt proceedings with respect to alleged refusals to comply with its discovery order dated May 27, 1982. *See Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alton & So. R. Co. v. Int'l Ass'n of Machinists & Aerospace Wkrs,* 463 F.2d 872, 878–880 (D.C.Cir.1972).*

I respectfully dissent.

---

* Were I to reach the merits of this controversy, I would point out that the majority opinion fails to follow the law of this circuit when it states that exercises of agency enforcement discretion are generally unreviewable. Majority opinion at 527 & n. 7. In *Chaney v. Heckler,* 718 F.2d 1174 (D.C.Cir.1983), *rehearing denied* 724 F.2d 1030 (D.C.Cir.1984), this court rejected that position. In *Chaney* this court stated: "Though some courts have traditionally displayed reluctance to review exercises of enforcement discretion, the Supreme Court has consistently instructed us to construe narrowly

the 'committed to agency discretion' exception, * * * [and] [t]his admonishment applies with no less force to review of agency enforcement discretion, including agency decisions to refrain from enforcement action. *Dunlop v. Bachowski, supra,* 421 U.S. 560 [95 S.Ct. 1851, 44 L.Ed.2d 377]." 718 F.2d at 1184. With respect to the majority's efforts in footnote 7 to evade without even distinguishing the clear holding in *Chaney,* it must be noted that the majority has a most selective ear for "the stifled cry of smothered stare decisis." *Id.* at 1198 (dissenting opinion).