759 F.2d 565
 53 USLW 2554
 Patricia GILLIS, Individually and as a Class Representative;
and Citizens for Better Care, Inc., Individually
and as a Class Representative,
Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.
 No. 82-1860.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 17, 1985.
Decided April 19, 1985.
 
 Robert Twitty, argued, Waynesboro, Ga., for plaintiffs-appellants.
 Shalom Brilliant, Dept. of Justice, Washington, D.C., Leonard R. Gilman, U.S. Atty., Derek I. Meier, Detroit, Mich., for defendant-appellee.
 Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 This is an appeal from an order dismissing the U.S. Department of Health and Human Services (HHS) as a defendant in a suit alleging violations of the Hill-Burton Act, 42 U.S.C. Sec. 291 et seq. Plaintiff-Appellants Patricia Gillis and Citizens for Better Health Care, Inc. (CBC) brought suit individually and as class representatives on behalf of all persons eligible to receive Hill-Burton uncompensated or reduced cost services at several Southeastern Michigan hospitals, alleging that the defendant hospitals had failed to fulfill their obligations relevant to the provision of such services, and that HHS had failed to monitor and enforce the hospitals' performance of those obligations. In their complaint they sought declaratory and injunctive relief, declaring the defendants to have acted unlawfully and ordering them to take corrective steps to remedy past violations and ensure that no future violations occurred.
 
 
 2
 A number of issues are raised by the parties to this appeal--whether CBC has standing to be a party plaintiff to this suit, whether an implied cause of action exists under the Hill-Burton Act against HHS, and whether a cause of action exists against HHS under the Administrative Procedure Act, 5 U.S.C. Sec. 706(1). Initially, however, we must determine whether the dismissal of HHS as a party defendant while the action continued against the hospitals is an appealable order.
 
 I.
 
 3
 To be appealable, the District Court's order dismissing HHS from this suit must qualify as either a final judgment under 28 U.S.C. Sec. 1291, or an "[i]nterlocutory order[ ] ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" under Sec. 1292(a)(1).[1] An order that does not specifically refuse an injunction but has the practical effect of doing so may be immediately appealable under Sec. 1292(a)(1). However, because Sec. 1292(a)(1) was intended to carve out only a limited exception to the final judgment rule, "[u]nless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981).
 
 
 4
 In discussing the "irreparable consequences" factor, the Court in Carson deemed significant whether the party seeking to appeal had requested and effectively been denied a preliminary injunction. 450 U.S. at 84-86, 101 S.Ct. at 996-998 (distinguishing Switzerland Cheese Ass'n v. E. Horne's Market, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), and Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), on basis that in those cases no preliminary injunction was sought nor irreparable harm alleged). "Most of the cases dealing with the practical denial of preliminary relief turn on the fact that characteristically, preliminary relief must be granted promptly to be effective." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3924, at 70 (1977). However, the logical significance of an effective denial of preliminary relief is undermined if it appears that the request for preliminary relief was included in the complaint as a matter of routine and despite reasonable opportunity is not being pressed. Id. at 69-70.
 
 
 5
 In the instant case, although plaintiffs requested a TRO and preliminary injunction against both HHS and defendant hospitals in their first amended complaint, no hearing was held on that request, nor is there any indication in the record that plaintiffs requested a hearing or actively pursued preliminary relief. In fact, the specific request for a TRO and preliminary injunction was omitted from plaintiffs' proposed second amended complaint, although in their reply brief to this Court they argue that effective denial of a preliminary injunction against HHS would result in its continued failure to carry out its Hill-Burton duties to the detriment of eligible consumers of health care in Wayne County, Michigan. Since, however, those duties involve oversight, not the actual provision of care, a preliminary injunction against the defendant hospitals, if warranted, would have achieved the desired end prior to final disposition of all claims. Cf. Western Geophysical Co. v. Bolt Associates, 440 F.2d 765, 769-71 (2d Cir.1971) (in case involving multiple claims, dismissal of claim on which preliminary relief was sought was not appealable where claims remained pursuant to which preliminary relief might still be obtained). Because appellants cannot show that dismissal of HHS, although effectively denying injunctive relief, would have serious consequences and can only be effectively challenged by an immediate appeal, this Court is not vested with jurisdiction under 28 U.S.C. Sec. 1292(a)(1) to consider their appeal.
 
 
 6
 Nor, in the context in which this case was presented to us prior to oral argument, would this Court be vested with jurisdiction under 28 U.S.C. Sec. 1291. Although the relief being sought against the agency is distinct from that sought against defendant hospitals, accord Davis v. Ball Memorial Hospital, 640 F.2d 30, 35 (7th Cir.1980);[2] see generally Local P-171, Amalgamated Meat Cutters of N.A. v. Thompson Farms Co., 642 F.2d 1065, 1067-71 (7th Cir.1981) (discussion of when interlocutory order has disposed of separate claim for relief for purposes of rule 54(b) certification), in the absence of "the entry [by the district court] of a final judgment as to one or more but fewer than all of the claims or parties ... upon an express determination that there is no just reason for delay," Fed.R.Civ.P. 54(b), it is clear that there is no final judgment in terms of Sec. 1291 and that this Court is without jurisdiction to consider the appeal. William B. Tanner Co. v. United States, 575 F.2d 101 (6th Cir.1978). However, we learned from plaintiffs' counsel for the first time during oral argument that none of the individual hospital defendants remain in the case.[3] Thus, we are presented with the question of whether a premature notice of appeal is effective to vest this Court with jurisdiction where the remaining elements of the case have been finally disposed of but no new notice of appeal has been filed.
 
 
 7
 Every circuit that has had occasion to address this question has held that an interlocutory appeal lacking the requisite rule 54(b) certification invokes appellate jurisdiction where judgment becomes final prior to disposition of the appeal. See Pireno v. New York Chiropractic Ass'n, 650 F.2d 387, 389-90 n. 4 (2d Cir.1981), aff'd sub nom. Union Labor Life Insurance Co. v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); Richerson v. Jones, 551 F.2d 918, 922-23 (3d Cir.1977); Tilden Financial Corp. v. Palo Tire Service, Inc., 596 F.2d 604, 606-07 (3d Cir.1979); Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184-85 (3d Cir.1983); Jetco Electronic Industries v. Gardiner, 473 F.2d 1228, 1231 (5th Cir.1973); Tower v. Moss, 625 F.2d 1161, 1164-65 (5th Cir.1980); Alcorn County v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1165-66 (5th Cir.1984); Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980); Baker v. Limber, 647 F.2d 912, 916 (9th Cir.1981); Martin v. Campbell, 692 F.2d 112 (11th Cir.1982).[4] A contrary holding would create a split in the circuits, which we are reluctant to do on an issue such as this. Although we do not condone plaintiffs' sloppy practice, we conclude that we have jurisdiction to consider the appeal in this instance. Cf. Brandon v. Holt, --- U.S. ----, ----, 105 S.Ct. 873, 879, 83 L.Ed.2d 878, 886-87 (1985) (Burger, C.J., concurring). Therefore, we proceed to the merits.
 
 II.
 A. STANDING
 
 8
 In plaintiffs' first amended complaint, the claim against HHS was made only by CBC. For an association to assert representational standing, it must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); see Warth v. Seldin, 422 U.S. 490, 511, 515, 95 S.Ct. 2197, 2211, 2213, 45 L.Ed.2d 343 (1975); Sierra Club v. Morton, 405 U.S. 727, 734-41, 92 S.Ct. 1361, 1365-69, 31 L.Ed.2d 636 (1972). Ms. Gillis, as individual plaintiff and in her capacity as representative of the putative class, alleged that she was eligible to receive free or reduced cost care under Hill-Burton and that one of the defendant hospitals had in fact failed to inform her of the existence of the program as it was obliged to do by the Act. However, there was no allegation that she was a member of CBC or that any other CBC member was being individually harmed. Moreover, it is unclear from the description of CBC as an "organization composed of residents of nursing homes, hospitals, relatives, and health professionals concerned with promoting health care," whether CBC's membership included hospitals whose interests would be adverse to the claims being brought on their behalf. Consequently, HHS claims, CBC does not satisfy the test for representational standing necessary to assert the claims being made against HHS.
 
 
 9
 The agency's argument rests in large part on its contention that this Court's consideration of plaintiffs' claims must be confined to the allegations contained in its first amended complaint. On March 15, 1982, the District Court heard oral argument on HHS's motion to dismiss, as well as plaintiffs' motion to amend their first amended complaint and the motion of certain hospital defendants for a more definite statement. The court's memorandum opinion of June 9, 1982, granting HHS's motion, relied solely on the reasoning of Davis v. Ball Memorial Hospital, which held that there was no implied cause of action against HHS under Hill-Burton. The question of CBC's standing is not mentioned,[5] although it is noted that the cause of action against HHS was only asserted by CBC. In its memorandum of the same date granting the motions to amend and for a more definite statement, the District Court quotes from plaintiffs' brief in support of its motion to amend, stating plaintiffs' reason to be " 'to cure possible minor defects in pleading,' " and notes that "the proposed Second Amended Complaint contains very slight changes from the First Amended Complaint." Although the court granted plaintiffs' motion to amend, it ordered that the second amended complaint be redrafted to comply with the motion for a more definite statement.[6] To date, the redrafted complaint has not been served on HHS.[7] Hence the contention of HHS that this Court must confine its consideration to the first amended complaint.
 
 
 10
 HHS asserts no rule or precedent supporting its argument that this Court must confine itself to the allegations contained in plaintiffs' first amended complaint simply because HHS was not served with the redrafted second amended complaint. Although the situation is certainly an unusual one, we see no reason why we should be so limited. The District Court granted plaintiffs' request to amend with the proposed second amended complaint before it, simultaneously granting appellee's motion to dismiss. Thus, the motion to dismiss was entered with the allegations contained in the proposed second amended complaint in mind.[8] If those allegations were before the District Court, logically they would be before this Court as well.
 
 
 11
 In Brandon v. Holt, --- U.S. ----, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the Court considered whether an action brought under 42 U.S.C. Sec. 1983 naming only a public official as defendant, which stated that his liability was "in his official capacity," was tantamount to an action against the entity he represents. The Court held that it was, provided that the entity received notice and an opportunity to respond. --- U.S. at ----, 105 S.Ct. at 878, 83 L.Ed.2d at 885-86. The Court also noted that "even at this late stage of the proceedings, petitioners are entitled to amend their pleadings to conform to the proof and to the District Court's findings of fact. Moreover, it is appropriate for us to proceed to decide the legal issues without first insisting that such a formal amendment be filed;" because it was plain that plaintiffs were claiming a right to recover damages from the city, "rather than the particular individual who occupied that office when the claim arose." --- U.S. at ----, 105 S.Ct. at 877-78, 83 L.Ed.2d at 885 (emphasis added) (footnote omitted).[9] Similarly, in National Wildlife Federation v. Costle, 629 F.2d 118 (D.C.Cir.1980), the court held that it could "consider issues raised by a summary judgment motion, even where the issues are not raised in the complaint, since the motion may be deemed to have initiated the process of amendment." 629 F.2d at 133 n. 45 (emphasis added).
 
 
 12
 Plaintiffs' proposed second amended complaint eliminates many of the arguments asserted by HHS on the standing issue. First, it specifically alleges both that Ms. Gillis is a CBC member, and that other of CBC's members who are low income persons are being injured in fact by the defendants. Second, it clarifies that no hospitals are members of CBC, and specifically alleges that "CBC has an organization [sic] interest in promoting health care policies which benefit low income persons." Moreover, in the second amended complaint the claim against HHS is asserted by Gillis as well as CBC. The District Court did note in its memorandum dismissing HHS that the claim against the agency asserted in plaintiffs' first amended complaint was brought only by CBC, and stated in its memorandum granting plaintiffs' motion to amend that their second amended complaint contained only "very slight changes" from their first amended complaint. Leave to amend against HHS at that stage being discretionary, undoubtedly the court would have permitted the addition of Gillis as a plaintiff against HHS had it not dismissed on the implied cause of action issue and thus been presented with the question of standing. It is not necessary to resolve that question, however, because on the basis of the allegations in the proposed second amended complaint,[10] CBC clearly makes a prima facie showing of representational standing.
 
 
 13
 The first part of the test, allegation of injury to individual members, and the second, that the interests being asserted fall squarely within the stated objectives of the organization, are plainly met. See Corum v. Beth Israel Medical Center, 359 F.Supp. 909, 914-15 (S.D.N.Y.1973). The third part of the test, whether the nature of the claims "requires individualized proof," Hunt, 432 U.S. at 344, 97 S.Ct. at 2442, is also met. In the context of the Hill-Burton program, representational standing is particularly appropriate, because participating hospitals are only required to provide a finite amount of services each year. No particular eligible individual has a right to care under Hill-Burton. Newsom v. Vanderbilt University, 653 F.2d 1100, 1116-22 (6th Cir.1981); see also Lane v. Lincoln County Hospital, 537 F.Supp. 114 (E.D.Tenn.1982).
 
 
 14
 Nevertheless, HHS argues that CBC's individual members' "status and interests are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." Associated General Contractors v. Otter Tail Power Co., 611 F.2d 684, 691 (8th Cir.1979). It makes two arguments in this regard. The first, that the suit conflicts with the interests of member hospitals, since it relies on the ambiguous wording of the first amended complaint, is resolved if the second amended complaint is taken into account. Their second argument is more problematic. It is that since the relief being sought might involve substantial costs to defendant hospitals, the suit conflicts with the interests of CBC member health care workers to whom these costs might be passed on in the form of lower salaries, and CBC member patients seeking care and ineligible for coverage under Hill-Burton, to whom these costs might be passed on in the form of higher charges.
 
 
 15
 Although there is a theoretical conflict between CBC members posited by HHS, it would not seem to be the type that should deprive an association of representational standing. See National Constructors Ass'n v. National Electrical Contractors Ass'n, 498 F.Supp. 510, 520-21 (D.Md.1980). First, the adverse effects to certain members of the relief being sought are both speculative and indirect. Second, once an organization has alleged actual injury to "its members, or any one of them," Warth v. Seldin, 422 U.S. at 511, 95 S.Ct. at 2211 (emphasis added), it may then argue on behalf of the "public interest." Sierra Club v. Morton, 405 U.S. at 737-38, 92 S.Ct. at 1367-68. Virtually any relief involving the expenditure of money that benefits some but not all of an organization's members potentially means that that money will be unavailable to or in part exacted from the remainder of the membership. By joining an organization dedicated to a particular goal in the public interest, members indicate a willingness to make certain sacrifices productive of that goal. Carried to its logical extreme, evaluation of representational standing in terms of the adverseness of remote interests of discrete members would seriously undermine the ability of individuals through organizations to achieve public interest objectives through the legal system. Cf. NCAA v. Califano, 622 F.2d 1382, 1391-92 (10th Cir.1980) (where one or more members of association support bringing suit, association has standing absent showing that more members oppose than support association's position).
 
 
 16
 B. IMPLIED CAUSE OF ACTION UNDER HILL-BURTON
 
 
 17
 The Hill-Burton provision pertaining to enforcement is 42 U.S.C. Sec. 300s-6.[11] It reads as follows:
 
 
 18
 The Secretary shall investigate and ascertain, on a periodic basis, with respect to each entity which is receiving financial assistance under this subchapter or which has received financial assistance under subchapter IV of this chapter or this subchapter, the extent of compliance by such entity with the assurances required to be made at the time such assistance was received. If the Secretary finds that such an entity has failed to comply with any such assurance, the Secretary shall report such noncompliance to the health systems agency for the health service area in which such entity is located and the State health planning and development agency of the State in which the entity is located and shall take any action authorized by law (including an action for specific performance brought by the Attorney General upon request of the Secretary) which will effect compliance by the entity with such assurances. An action to effectuate compliance by the entity with any such assurance may be brought by a person other than the Secretary only if a complaint has been filed by such person with the Secretary and the Secretary has dismissed such complaint or the Attorney General has not brought a civil action for compliance with such assurance within six months after the date on which the complaint was filed with the Secretary.
 
 
 19
 Since the statute on its face does not expressly grant a right of action against the Secretary to compel it to effectuate compliance, the court in Davis v. Ball Memorial Hospital applied the four factor test of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[12] to determine whether a private remedy is implicit in the statute.[13] It concluded that no such remedy was implied, and persuasively so. See 640 F.2d at 44-46. In particular, it emphasized that implying "a private right of action to compel a federal agency to enforce provisions of an Act resembling this one would allow individuals to circumvent the procedural limitations of the legislative enactment." 640 F.2d at 46 (footnote omitted).
 
 
 20
 In Newsom, this Court noted the similarity between the enforcement mechanisms established by Congress in the 1972 amendments to Title VII of the Civil Rights Act of 1964, in 42 U.S.C. Sec. 2000e-5, and Hill-Burton, in 42 U.S.C. Sec. 300s-6 (filing of complaint with agency; private right of action upon dismissal of complaint, expiration of six months, or earlier upon receipt of express authorization; etc.). 653 F.2d at 1108. In the case of both Title VII and Hill-Burton, in providing for a private right of action in lieu of agency enforcement, the objective of Congress was to provide an alternative avenue of relief for individuals adversely affected by agency inaction, dalliance or backlog. Compare Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 362-66, 97 S.Ct. 2447, 2452-54, 53 L.Ed.2d 402 (1977) (review of legislative history of Title VII private right of action) with Newsom, 653 F.2d at 1120-21 n. 5 (review of legislative history of Hill-Burton enforcement provision). Hence, those courts addressing the question have held that there is no implied cause of action under Title VII to compel enforcement action by the EEOC. See Ward v. EEOC, 719 F.2d 311, 313 (9th Cir.1983); Stewart v. EEOC, 611 F.2d 679, 682 (7th Cir.1979); Gibson v. Missouri Pacific R.R. Co., 579 F.2d 890, 891 (5th Cir.1978), cert. denied, 440 U.S. 921, 99 S.Ct. 1245, 59 L.Ed.2d 473 (1979); Feldstein v. EEOC, 547 F.Supp. 97, 99 (D.Mass.1982). Similarly, to the extent that plaintiffs seek to compel HHS to investigate, ascertain and effect compliance, we agree with the Davis court that there exists no implied cause of action under Hill-Burton and their claim against HHS was properly dismissed.C. CAUSE OF ACTION UNDER THE APA
 
 
 21
 "Regardless of whether a statute implies a private right of action, administrative actions thereunder may be challenged under the APA unless they fall within the limited exceptions of that Act." Glacier Park Foundation v. Watt, 663 F.2d 882, 885 (9th Cir.1982). In Davis, plaintiffs seem to have asserted a claim based on the APA only indirectly or belatedly, arguing that "the differences between a private right of action under the Hill-Burton Act and the ... APA are inconsequential." The court refused to consider whether their claim was reviewable under the APA, describing the circumstances of its introduction as a "glib treatment of the jurisdictional basis of [the] lawsuit," "inconsistent with the basic notice requirements of judicial practice," and altering, at a late stage in the litigation, "the entire theory of their action with a mere wave of the hand." 640 F.2d at 47. In the instant case, HHS argues that since plaintiffs failed to assert a claim under the APA in their first amended complaint, such a claim is not properly before this Court. However, as noted above, this Court may properly consider the allegations contained in the second amended complaint, in which a claim under the APA was alleged.[14] Nor can it be said that plaintiffs' APA claim was raised at a late stage in this litigation.
 
 
 22
 An agency action,[15] to be reviewable under the APA, must be a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. Sec. 704. HHS's failure to enforce compliance with Hill-Burton assurances is not reviewable under this standard. First, inaction under Sec. 300s-6 does not constitute a "final agency action." Neither Title VII nor Hill-Burton empowers the agency charged with enforcement to make binding administrative determinations regarding alleged violations. See Newsom, 653 F.2d at 1107-08. Comparably to HHS, "[t]he EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit by either the EEOC or the charging party in federal court; only the district court may fix liability." Ward, 719 F.2d at 313-14 (citation omitted); see Stewart, 611 F.2d at 682-84. Second, plaintiffs in the instant case do not satisfy the "no other adequate remedy in a court" requirement, since they may still sue defendant hospitals. Cf. Ward, 719 F.2d at 314; Stewart, 611 F.2d at 683-83; Hall v. EEOC, 456 F.Supp. 695, 701 (N.D.Cal.1978). In fact, they were expressly authorized to do so by HHS's issuance of a "right to sue" letter based upon its determination that it would be "unable to issue a decision on [plaintiffs'] complaint or otherwise take appropriate action within six months." 42 C.F.R. Sec. 124.511(a)(4).
 
 
 23
 However, plaintiffs also claim that HHS has failed to carry out its "monitoring" as well as its "enforcement" function. They rely in part upon the dissent in Davis, which distinguished the agency's "highly discretionary" duty to enforce from its nondiscretionary duty to monitor compliance. 640 F.2d at 47-48 (Fairchild, C.J., dissenting). Analytically, "monitoring" would encompass those duties prescribed by statute or regulation associated with the first sentence of Sec. 300s-6, which requires that: "The Secretary shall investigate and ascertain, on a periodic basis, with respect to each entity which is receiving financial assistance ..., the extent of compliance by such entity with the assurances required to be made at the time such assistance was received." The remainder of Sec. 300s-6 clearly pertains to "enforcement," beginning with the phrase: "If the Secretary finds that such an entity has failed to comply with any such assurance" (emphasis added).
 
 
 24
 The APA does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. Sec. 701(a)(2).
 
 
 25
 Whether a particular agency decision is committed to agency discretion depends, broadly speaking, on whether there is law to apply in making and reviewing the decision, which in turn depends, we have said, on "pragmatic considerations as to whether an agency determination is the proper subject of judicial review." Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031, 1043 (D.C.Cir.1979). Among the important considerations are "the need for judicial supervision to safeguard the interests of the plaintiffs[,] the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role[,] and the appropriateness of the issues raised for judicial review." Id. at 1044.
 
 
 26
 Investment Co. Institute (ICI) v. FDIC, 728 F.2d 518, 526 (D.C.Cir.1984) (footnote omitted).
 
 
 27
 To the extent that such line drawing is possible, grouping certain of the agency's functions under the rubric of "monitoring" and others under "enforcement" is a distinction without a difference. The mechanism by and extent to which HHS "monitors" as well as "enforces" compliance fall squarely within the agency's exercise of discretion. See Kixmiller v. SEC, 492 F.2d 641, 645 (D.C.Cir.1974) ("An agency's decision to refrain from an investigation or an enforcement action is generally unreviewable...." (emphasis added)).[16]
 
 
 28
 In United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), --- U.S. ----, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Court was faced with the question of whether the Federal Aviation Administration's (FAA) spot-check system of monitoring manufacturers' compliance with minimum safety standards fell within the "discretionary function or duty" exemption from liability of the Federal Tort Claims Act (FTCA), 28 U.S.C. Sec. 2680(a). While the scope of the FTCA discretionary function exception is much broader than that of the APA,[17] the Court's analysis is instructive in determining whether inaction by HHS in "monitoring" and "enforcing compliance with Hill-Burton assurances is a "proper subject of judicial review":
 
 
 29
 The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the "nature and quality" protected by Sec. 2680(a). When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturer's compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.
 
 
 30
 --- U.S. at ----, 104 S.Ct. at 2768, 81 L.Ed.2d at 678. Similar concerns were noted by the court in ICI. In holding that the FDIC's declining to decide the merits of ICI's petition requesting that the agency declare a plan to sell mutual fund shares unlawful, was not reviewable under the APA, the court noted the extent of the FDIC's regulatory responsibilities and credited the agency's assertion that the exercise of those responsibilities "would be severely disrupted if every person seeking FDIC action on a petition seeking enforcement action could invoke judicial review of a simple FDIC refusal to consider the merits of the petition." 728 F.2d at 526.
 
 
 31
 Similar deference to administrative discretion is appropriate in the instant case. "[T]he authority conferred upon the Secretary under the Hill-Burton Act is very broad.... Congress expressly delegated to the Secretary the authority to set standards of compliance with the Act's goals ...." American Hospital Ass'n v. Schweiker, 721 F.2d 170, 176 (7th Cir.1983). The regulations pertaining to investigation and enforcement of Hill-Burton assurances specifically incorporate the weighing process postulated by the Court in Varig Airlines, stating that the Secretary may dismiss a complaint without a finding as to compliance, "based on priorities for the disposition of complaints that are established to promote the most efficient use of enforcement resources." 42 C.F.R. Secs. 124.511(a)(4) & 124.606(b)(4).
 
 
 32
 Even if the Secretary has failed to "monitor" facilities by requiring periodic submission of "data and information which reasonably supports ... compliance," 42 U.S.C. Sec. 300s,[18] and such inaction constitutes a "final agency action" for purposes of 5 U.S.C. Sec. 704, plaintiffs cannot satisfy the second prerequisite to review under Sec. 704 that "there is no other adequate remedy in a court." The regulations provide that the reporting and record maintenance requirements imposed on participating facilities run to the public as well as the Secretary. 42 C.F.R. Secs. 124.510(b)(1) & 124.605(b)(1). Hence, they are effectively subject to enforcement by means of private suits brought directly against facilities.
 
 
 33
 In Council of and for the Blind of Delaware County Valley, Inc. v. Regan, 709 F.2d 1521 (D.C.Cir.1983) (en banc), plaintiffs brought suit directly against the Secretary of the Treasury and Director of the Office of Revenue Sharing (ORS) to compel them to monitor compliance with and enforce the nondiscrimination obligation of local government entities attendant upon receipt of revenue sharing funds. The Revenue Sharing Act was amended by Congress in 1976 to provide for a private cause of action against local government entities to enforce this obligation, conditioned upon the exhaustion of administrative remedies. Pub.L. No. 94-488, Sec. 7, 90 Stat. 2349 (codified as amended at 31 U.S.C. Sec. 6721). The court held that no cause of action could be implied from the Act directly against the Secretary and ORS, 709 F.2d at 1525-31, and that although their inaction was "final" as regards Sec. 704, the private remedy provided by 31 U.S.C. Sec. 6721 was "adequate," and hence such inaction was unreviewable under the APA. Id. at 1531. The court rejected appellant's argument that "[i]f the ORS pursued complaints adequately, funded units would comply with the law sooner, ... and the need for appellants to resort to expensive, time-consuming section [6721] suits would diminish." Id. at 1532. Cf. ICI, 728 F.2d at 526 ("[N]othing was shown to cast doubt on the ability of ICI to bring an action directly against the bank whose conduct it thought unlawful, an action that, though possibly inconvenient, was an alternative form of relief.... [T]he hardship to ICI is not substantial enough to justify judicial review."). The court reasoned that broad declaratory and injunctive relief against the government would place the court in the position thereafter of "supervis[ing] the ORS's handling of virtually every alleged violation" of the Act, that it was doubtful whether such an approach would be more effective than several private suits, and that "it would empower one district judge to act as supreme supervisor of the ORS's enforcement activities--a role more appropriately reserved for the Executive under the oversight of Congress." Id. This reasoning is equally applicable in the instant case. Neither inconvenience nor a speculative disincentive to entity compliance render resort to the private suit remedy available to enforce Hill-Burton assurances inadequate.
 
 
 34
 In concluding that appellants' claim against HHS in the instant case is not reviewable under the APA, we do not hold that the agency's performance as administrator of the Hill-Burton program is entirely immune from judicial review. "When agency recalcitrance is in the face of a clear statutory duty or is of such magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive statutory mandates." Public Citizen Health Research Group v. Commissioner, 740 F.2d 21, 32 (D.C.Cir.1984) (citing Adams v. Richardson, 480 F.2d 1159 (D.C.Cir.1973) (en banc),[19] and Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 594-95 (D.C.Cir.1971)); cf. Heckler v. Chaney, --- U.S. ----, ---- - ----, 105 S.Ct. 1649, 1658-62, 84 L.Ed.2d 714 (1985) (Brennan, J., concurring).
 
 
 35
 Although appellants' proposed second amended complaint contains the conclusory allegation in paragraph 77 that "Defendant HHS' actions constitute wanton and wholesale neglect of its statutory and regulatory duties under the Hill-Burton program," the allegations in the preceding 76 paragraphs of the complaint make it clear that appellants are complaining about the level of enforcement and monitoring by the agency. There is nothing whatsoever in the pleadings or record of this case to support an assertion that HHS has totally abdicated its statutory responsibility; in fact, just the opposite is true. The various letters from HHS to appellants' counsel contained therein indicate the exercise of reasoned judgment by agency in processing their complaints,[20] and even the investigation of and taking of corrective action on the specific complaint that defendant hospitals were in violation of their community service obligations in failing to post required bilingual notices.
 
 
 36
 Plaintiffs' complaint fails to state a claim under the APA. Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Other bases of jurisdiction to hear an interlocutory appeal, such as the collateral order doctrine and certification under 28 U.S.C. Sec. 1292(b), are inapplicable to the instant appeal
 
 
 [2]
 In Davis, which similarly involved an appeal from dismissal of the Secretary of HEW in a suit against hospital and agency defendants alleging noncompliance with Hill-Burton, the court held that the dismissal order was appealable under Sec. 1292(a)(1). However, the case was decided before the Supreme Court's decision in Carson, and does not go beyond determining whether the dismissal order had the effect of denying an injunction to apply the additional criteria of serious consequences and effectual challenge only possible by immediate appeal
 
 
 [3]
 This fact is confirmed by the current District Court docket sheet, a certified copy of which was filed with our Court after oral argument. The final docket entry, dated August 27, 1984, is for a stipulation and order that the case is dismissed with prejudice
 
 
 [4]
 Nor does Fed.R.App.P. 4(a)(4), as amended in 1979, which provides that notices of appeal filed during the pendency of Fed.R.Civ.P. 50(b), 52(b) and 59 post-trial motions, shall have no effect, mandate a different result. No such motions are involved here. No request to have the judgment certified under rule 54(b) was made. However, no just reason for delay can exist after the final judgment as to all parties has been entered. Compare Jetco, 473 F.2d at 1231 ("Mindful of the Supreme Court's command that practical, not technical, considerations are to govern the application of principles of finality, ... we decline appellee's invitation to exalt form over substance by dismissing this appeal." (citations omitted)) with Jackson v. Tennessee Valley Authority, 595 F.2d 1120, 1121 (6th Cir.1979) (" 'an appeal should not be dismissed because it was technically premature if in fact an appealable judgment or order was rendered below' " (quoting 9 Moore's Federal Practice p 204.14, at 983 (2d ed. 1975))). Since the amendment of rule 4, the Third and Fifth Circuits have held that premature notice of appeal continues to invoke appellate jurisdiction except in the specific circumstances prescribed in the rule. In Cape May Greene, the court reasoned that rule 4(a)(4) should be so restricted on the basis of rule 4(a)(2), also amended in 1979, which states that "[e]xcept as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order" shall be effective. 698 F.2d at 185. Cape May Greene was followed by the court in Alcorn County, 731 F.2d at 1166
 
 
 [5]
 HHS quotes National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974), for the proposition that consideration of whether a private cause of action exists should precede consideration of the standing question. See 414 U.S. at 456, 94 S.Ct. at 692 ("[T]he threshold question clearly is whether the Amtrack Act or any other provision of law creates a cause of action whereby a private party such as the respondent can enforce duties and obligations imposed by the Act; for it is only if such a right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it."). Despite the clear language of the Court in Passenger Corp., the problem would not appear to be quite that simple. Since standing is a jurisdictional prerequisite to the case or controversy requirement of Article III of the Constitution, see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), it would be necessary at least to determine at the outset whether CBC had standing to present the question of statutory interpretation of whether a private cause of action existed against HHS. HHS clearly recognizes the difference, arguing in its brief, despite its reference to Passenger Corp., that whether CBC has standing to maintain an action under the Article III case or controversy requirement is distinct from whether it has standing to bring an action under Hill-Burton or the APA if such a cause of action exists
 
 
 [6]
 An examination of the record of the preliminary hearing before the District Court reveals that there was no significant objection by any of the defendants, including HHS, to plaintiffs' motion to amend. The only objection voiced to plaintiffs' proposed second amended complaint was that it failed to specify which of the laundry list of Hill-Burton violations being alleged specifically were being committed by which defendants, which the court addressed by granting plaintiffs' motion for leave to amend subject to defendants' motion for a more definite statement
 
 
 [7]
 While HHS observed in its brief that it was uncertain whether a satisfactorily amended complaint was ever prepared and served on anyone, we learned from plaintiffs' counsel at oral argument, and it is confirmed by the updated docket sheet, that a redrafted complaint was filed with the court and served on the hospital defendants then remaining in the case
 
 
 [8]
 HHS was well aware of the contents of plaintiffs' proposed second amended complaint at the time of the preliminary hearing on the motions to dismiss, amend, and for a more definite statement. In fact, counsel for HHS stated at the hearing on these preliminary motions that he was "prepared ... to address the merits [of the motion to dismiss] on either of the complaints" that morning. Hearing Record at 13. Thus, it cannot be said that HHS lacked notice of plaintiffs' allegations and was prejudiced thereby. Cf. Brandon v. Holt, --- U.S. ----, ----, 105 S.Ct. 873, 878, 83 L.Ed.2d 878, 885 (1985) (42 U.S.C. Sec. 1983 suit naming only individual public official as defendant "imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond"); Haas v. Pittsburgh National Bank, 526 F.2d 1083, 1097-98 (3d Cir.1975) (lack of proper named representative plaintiff against particular defendant in class action complaint would not prevent amendment of complaint after expiration of limitations period to add nominal plaintiff where the defective complaint had apprised the defendant of the claims against it)
 
 
 [9]
 Fed.R.Civ.P. 15(b), which permits conforming amendments, is inapplicable in the instant case since by its terms it applies only to "issues not raised by the pleadings" that have been "tried by express or implied consent of the parties." However, another basis upon which amendment may be had at any stage in a proceeding is 28 U.S.C. Sec. 1653, which states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Although the cases decided under this section have generally involved defective allegations of diversity or jurisdictional amount, standing may also be jurisdictional, see note 5 supra, and the inadvertent failure to allege that members of an organization asserting representational standing have suffered individual injury, cf. Sierra Club v. Morton, 405 U.S. at 735-36 & n. 8, 740 & n. 15, 92 S.Ct. at 1366-67 & n. 8, 1368 & n. 15 (plaintiff specifically declined to assert individualized interest), might fall within this provision. "Amendment to establish jurisdiction is broadly permitted, so as to effectuate Congress' intent in enacting Sec. 1653--to avoid dismissals on technical grounds." Miller v. Davis, 507 F.2d 308, 311 (6th Cir.1974) (citations omitted)
 
 
 [10]
 "For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. at 501, 95 S.Ct. at 2206 (citation omitted)
 
 
 [11]
 Relevant to the agency's duty to "investigate and ascertain ... the extent of compliance" is the final subsection of 42 U.S.C. Sec. 300s, which provides:
 An entity subject to the requirements prescribed pursuant to paragraph (3) respecting compliance with assurances made in connection with receipt of financial assistance shall submit periodically to the Secretary data and information which reasonably supports the entity's compliance with such assurances. The Secretary may not waive the requirement of the preceding sentence.
 The assurances required of institutions receiving Hill-Burton financial assistance have come to be referred to as the "community service" and "reasonable volume" or "uncompensated care" assurances. See American Hosp. Ass'n v. Schweiker, 721 F.2d 170, 172-73 (7th Cir.1983). The regulations issued by the Secretary pertaining to these assurances appear at 42 C.F.R. Secs. 124.501 et. seq. (uncompensated care) & 124.601 et seq. (community service). 721 F.2d at 174-75. In particular, the mechanism by which the Secretary monitors and enforces compliance with the assurances is contained in Secs. 124.510 & 124.511 (and 124.605 & 124.606, the language of which parallels the quoted sections), which provide in pertinent part:
 Sec. 124.510 Reporting and record maintenance requirements.
 (a) Reporting requirements --(1) Timing of reports --(i) A facility shall submit to the Secretary a report to assist the Secretary in determining compliance with this subpart once every three fiscal years, on a schedule to be prescribed by the Secretary.
 ....
 (2) Content of report. The report must include the following information, in a form prescribed by the Secretary:
 (i) Information that the Secretary prescribes to permit a determination of whether a facility has met the annual compliance level for the fiscal years covered by the report;
 ....
 (iii) If the amount of uncompensated services provided by the applicant in the preceding fiscal year was lower than the annual compliance level, an explanation of why the facility did not meet the required level....
 ....
 (b) Record maintenance requirements. (1) A facility shall maintain, make available for public inspection consistent with personal privacy, and provide to the Secretary on request, any records necessary to document its compliance requirements of this subpart in any fiscal year, including:
 (i) Any documents from which information required to be reported under paragraph (a) of this section was obtained;
 ....
 Sec. 124.511 Investigation and enforcement.
 (a) Investigations. (1) The Secretary periodically investigates the compliance of facilities with the requirements of this subpart, and investigates complaints.
 ....
 (4) Section 1612(c) of the Act provides that if the Secretary dismisses a complaint or the Attorney General has not brought an action for compliance within six months from the date on which the complaint is filed, the person filing it may bring a private action to effectuate compliance with the assurance. If the Secretary determines that he will be unable to issue a decision on a complaint or otherwise take appropriate action within the six month period, he may, based on priorities for the disposition of complaints that are established to promote the most effective use of enforcement resources, or on the request of the complainant, dismiss the complaint without a finding as to compliance prior to the end of the six month period....
 (b) Enforcement. (1) If the Secretary finds ... that a facility did not comply with the requirements of this subpart, he may take any action authorized by law to secure compliance, including but not limited to voluntary agreement or a request to the Attorney General to bring an action against the facility for specific performance.
 ....
 
 
 [12]
 First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law ...?
 422 U.S. at 78, 95 S.Ct. at 2087 (citations omitted) (emphasis in original).
 
 
 [13]
 The Davis court was interpreting 42 U.S.C. Sec. 300p-2(c), which was replaced by Sec. 300s-6 in 1979. The wording of the two sections is identical
 
 
 [14]
 The District Court memorandum dismissing HHS specifically sets forth the cause of action stated in plaintiffs' first amended complaint. Although the assertion of a cause of action under the APA was contained in plaintiffs' proposed second amended complaint and raised during argument on the motion to dismiss, the District Court did not reject this claim on either substantive or procedural grounds; there is simply no mention whatsoever of the APA in the court's memorandum opinion
 
 
 [15]
 The statutory definition of "agency action" includes "failure to act." 5 U.S.C. Sec. 551(13). Courts are empowered to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. Sec. 706(1)
 
 
 [16]
 The logical relevance of equating "investigation" and "enforcement" is an issue distinct from the reviewability of decisions not to enforce. Moreover, any doubt about the viability of the statement in Kixmiller that an agency's failure to take enforcement actions is "generally unreviewable," see ICI, 728 F.2d at 528 n. * (Wright J., dissenting); Chaney v. Heckler, 718 F.2d 1174, 1187-88 nn. 35-36 (D.C.Cir.1983), rev'd --- U.S. ----, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), was resolved by the Supreme Court in reversing Chaney. See --- U.S. at ---- - ----, 105 S.Ct. at 1654-58 (general presumption of unreviewability of decisions not to enforce confirmed)
 
 
 [17]
 The "committed to agency discretion" exception is "a very narrow exception," Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971), to the "basic presumption of judicial review" embodied in the statute, Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967). But cf. Heckler v. Chaney, --- U.S. ----, ---- - ----, 105 S.Ct. 1649, 1660-64, 84 L.Ed.2d 714 (1985) (Marshall, J., concurring) ("presumption of unreviewability" of agency decisions not to take enforcement action at variance with general "presumption of reviewability" ascribed to APA)
 
 
 [18]
 It is noteworthy in this regard that the quoted requirement of Sec. 300s is directed to assisted entities rather than the Secretary. Arguably, promulgation of 42 C.F.R. Secs. 124.510 & 124.605 establishing specific reporting and record maintenance requirements would fulfill the Secretary's "monitoring" function, any action pursuant to the failure of an entity to comply with those regulations falling within the realm of "enforcement." Cf. Wyoming Hosp. Ass'n v. Harris, 727 F.2d 936, 939 (10th Cir.1984) ("Because monitoring compliance under the 'open door' option was at least difficult, the Secretary promulgated levels of presumptive compliance in the exercise of his discretion. His deletion of an 'open door' option developed certainty in compliance ....")
 
 
 [19]
 It is clear from this and other recent references to Adams that appellants' reliance on that case is misplaced. First, the D.C. Circuit now characterizes that case as responding specifically to "a consistent policy of abdicating statutory duty." ICI, 728 F.2d at 527. Second, Adams involved Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000d et seq., in which, unlike the Hill-Burton, Title VII and Revenue Sharing Acts, Congress did not expressly provide a remedy for the agency's failure to enforce its nondiscrimination provision. Council of the Blind, 709 F.2d at 1531. Third, the Adams court emphasized that "HEW is actively supplying segregated institutions with federal funds, contrary to the wishes of Congress. It is one thing to say the Justice Department lacks the resources necessary to locate and prosecute every civil rights violator; it is quite another to say HEW may affirmatively continue to channel federal funds to defaulting schools." 480 F.2d at 1162
 
 
 [20]
 Appellants concede in their reply brief to this court that "HHS processed Gillis's and CBC's individual and collective administrative claims against some of the defendant hospitals, and HHS, and gave the appellants authority to seek legal redress of the claims. The question remains what, if anything, can be done regarding HHS [sic] purported failure to follow its statutory mandate to monitor, investigate, and enforce compliance with the Hill Burton Act of hospitals who have received public funds under the Act."